******************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************

# STONE KEY GROUP, LLC *v.* REID TARADASH
## (AC 42524)

Lavine, Elgo and Alexander, Js.*

*Syllabus*

The plaintiff banking firm sought to recover damages from the defendant, a former employee of the plaintiff, for, inter alia, breach of contract in connection with bonus agreements between the parties. The plaintiff, which had paid annual discretionary bonuses to its employees, was unable to pay the plaintiff his 2014 bonus until 2016 because of financial difficulties. When the defendant shortly thereafter requested his bonus for 2015, U, the plaintiff's chief executive officer, told him that the plaintiff was not paying 2015 bonuses at that time because it had just paid 2014 bonuses. The defendant thereafter told U that, in exchange for the 2015 bonus, he would bring his family to the United States from the Philippines, buy a home in Connecticut and redouble his efforts at the plaintiff's firm. Pursuant to written agreements the parties executed, U agreed to pay the defendant an advance on the 2015 bonus and an additional payment at a later date. Six days after receiving the advance on the 2015 bonus, the defendant informed U that he was resigning and moving to the Philippines. On his last day of employment, the defendant returned to the plaintiff a laptop computer that the plaintiff had provided to him. U thereafter discovered on the laptop e-mails from the defendant to friends and coworkers indicating that he had been preparing to start an information technology business in the Philippines upon receipt of the 2015 bonus. U concluded that the defendant had used the plaintiff's resources to develop that business. The plaintiff thereafter sought repayment of the 2014 bonus and the 2015 bonus advance. The trial court rendered judgment for the plaintiff on its complaint in part and thereafter granted in part the plaintiff's motion for attorney's fees. On the defendant's appeal and the plaintiff's cross appeal to this court, *held* that the trial court properly rendered judgment for the plaintiff and granted its motion for attorney's fees, and, because the court's memoranda of decision fully addressed the arguments raised in this appeal, this court adopted the trial court's memoranda of decision as proper statements of the facts and applicable law.

Argued September 17, 2020—officially released April 20, 2021

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendant filed a counterclaim; thereafter, the court, *Lee, J.*, granted the defendant's motion to cite in Stone Key Securities, LLC, et al., as counterclaim defendants; subsequently, the matter was tried to the court; thereafter, the complaint was withdrawn in part; judgment for the plaintiff on the complaint in part and on the counterclaim, from which the named defendant appealed to this court; subsequently, the court, *Lee, J.*, granted in part the plaintiff's motion for attorney's fees, and the named defendant filed an amended appeal and the plaintiff cross appealed to this court. *Affirmed.*

*James Nealon*, for the appellant-cross appellee (defendant).

*Daniel L. Schwartz*, with whom, on the brief, was *Howard Fetner*, for the appellee-cross appellant (plaintiff).

*Opinion*

PER CURIAM. This case involves a dispute between the plaintiff employer, Stone Key Group, LLC, and the defendant employee, Reid Taradash, concerning the payment of two discretionary bonus agreements to the defendant. On appeal, the defendant claims that the trial court improperly (1) ruled in favor of the plaintiff on his wage claim pursuant to General Statutes § 31-72,[1] (2) concluded that he fraudulently induced the plaintiff into paying an advance on his 2015 bonus, (3) permitted the plaintiff to rescind that advance, (4) awarded the plaintiff punitive damages, and (5) assessed postjudgment interest. In its cross appeal, the plaintiff claims that the court improperly (1) rejected its claim that the defendant breached the terms of an agreement regarding his 2014 bonus, (2) denied its motion for prejudgment interest, and (3) failed to award the full amount of its requested attorney's fees and costs. We affirm the judgment of the trial court.

The plaintiff is a private merchant banking firm in Greenwich. At all relevant times, the defendant, who now resides in the Philippines, was an employee of the plaintiff. As part of its benefits package, the plaintiff paid large, annual discretionary bonuses to its employees. Beginning in 2010, the plaintiff required its employees to sign contracts in order to receive those annual bonuses. The amount of each bonus was left to the discretion of the plaintiff on the basis of (1) an individual employee's performance, (2) the plaintiff's performance overall, (3) macroeconomic conditions, (4) the plaintiff's anticipated future revenues, and (5) bonuses paid by other competing investment banks.

From 2012 to 2014, the plaintiff suffered significant financial difficulties.[2] As a result, the defendant did not receive a bonus for the 2013 year until December 23, 2014, as memorialized in a contract titled "Revised 2013 Bonus Terms" (2013 bonus agreement). The 2013 bonus agreement contained a "clawback provision" that allowed the plaintiff to recover all or part of future annual bonuses for a specific year if an employee engaged in certain wrongful conduct specified therein.

The plaintiff did not pay any 2014 bonuses to its employees until the first quarter of 2016. On February 29, 2016, the defendant signed two documents. The first was titled "2014 Bonus Terms—Reid M. Taradash," and the second was titled "2014 Grant of Bonus Agreement" (2014 bonus agreement). The defendant subsequently received payment of his 2014 bonus in the amount of $524,999.92. The 2014 bonus agreement contained a clawback provision that allowed the plaintiff to recover 100 percent of the bonus it paid the defendant in the event that the defendant's employment was terminated "for cause."[3]

Shortly after receiving his 2014 bonus, the defendant

asked the plaintiff's chief executive officer, Michael Urfirer, for a 2015 bonus. Urfirer replied that the plaintiff was not paying 2015 bonuses at that time because it had just paid 2014 bonuses. Urfirer and the defendant later had a second discussion about paying the defendant a 2015 bonus, during which the defendant told Urfirer that, in exchange for a 2015 bonus, he would bring his family to the United States from the Philippines, buy a home in Connecticut, and redouble his efforts at the firm.[4] The evidence presented at trial nonetheless revealed, as he stated in multiple e-mails to his friends and coworkers, that the defendant was preparing to move to the Philippines to start an information technology business with a coworker, Sumit Laddha, upon receipt of his 2015 bonus.

Urfirer ultimately agreed to pay the defendant a $250,000 advance on his 2015 bonus subject to the clawback provision, as well as an additional payment of at least $250,000 at a later date. As part of that transaction, the plaintiff and the defendant signed two documents on March 14, 2016: the "2015 Bonus Advance Terms—Reid M. Taradash" and the "2015 Grant of Bonus Advance Agreement" (2015 bonus advance agreement). The defendant was the only employee who received a 2015 bonus advance in March, 2016.

On March 21, 2016, six days after receiving the advance on his 2015 bonus, the defendant informed Urfirer that he was resigning and moving to the Philippines. In response, Urfirer told the defendant that he believed that the defendant had procured the bonuses under false pretenses and demanded that the defendant either return the bonuses or retract his resignation. The defendant did neither and relocated to the Philippines.

On his last day of employment, the defendant returned his employer provided laptop to the plaintiff. When Urfirer later used the laptop during a client presentation, the defendant's Google e-mail account appeared onscreen. At that time, Urfirer discovered many of the defendant's e-mails related to his new information technology business and concluded that the defendant had used the plaintiff's resources to develop that business. As a result, the plaintiff's legal counsel sent the defendant a letter notifying him that the plaintiff had reviewed his e-mails and demanding that he repay the 2014 bonus and 2015 bonus advance in full. When the defendant did not respond, Urfirer sent him a letter on September 12, 2016, in which he retroactively terminated the defendant's employment for cause.

On September 26, 2016, the plaintiff commenced the present action. The complaint alleged, inter alia, (1) breach of contract with respect to the 2014 bonus agreement and 2015 bonus advance agreement, (2) fraudulent inducement with respect to the 2015 bonus advance, (3) intentional misrepresentation, (4) negligent misrepresentation, (5) breach of fiduciary duty, (6) conversion,

and (7) a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The defendant filed an answer denying the material allegations of the complaint, along with six special defenses and a thirteen count counterclaim.

An eight day court trial was held from December 12, 2017, to January 19, 2018. The court thereafter issued a comprehensive memorandum of decision on November 2, 2018, in which it set forth detailed findings of fact and a thorough analysis of the claims brought by the plaintiff and the defendant. On July 25, 2019, the court issued a second memorandum of decision in which it addressed the plaintiff's subsequent motion for attorney's fees, costs, and interest.[5] Our examination of the record on appeal, and the briefs and oral arguments of the parties, persuades us that the judgment of the trial court should be affirmed. Because the court's memoranda of decision fully address the arguments raised in the present appeal, we adopt the court's thorough and well reasoned decisions as proper statements of the facts and applicable law. See *Stone Key Group, LLC* v. *Taradash*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-16-6029872-S (November 2, 2018) (reprinted at 203 Conn. App. 61, A.3d ). It would serve no useful purpose for us to repeat the discussion contained therein. See, e.g., *Woodruff* v. *Hemingway*, 297 Conn. 317, 321, 2 A.3d 857 (2010); *Maselli* v. *Regional School District No. 10*, 198 Conn. App. 643, 647–48, 235 A.3d 599, cert. denied, 335 Conn. 947, 238 A.3d 19 (2020).

The judgment is affirmed.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] General Statutes § 31-72 provides in relevant part: "When any employer fails to pay an employee wages . . . or fails to compensate an employee . . . such employee . . . shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court. . . ."

[2] Specifically, in 2012, the plaintiff expected to earn $20 million but earned slightly more than $6 million. In 2013, the plaintiff's earnings were approximately $350,000, resulting in a loss of more than $11 million. In 2014, the plaintiff earned $3.5 million in revenue, resulting in a $3.3 million loss for the year.

[3] The 2014 bonus agreement defined "cause" as either (1) a "violation of a material policy of the [plaintiff]," (2) the "engagement in a dishonest or wrongful act involving fraud, misrepresentation or moral turpitude causing damage or potential damage [to the plaintiff]," (3) the "willful failure to perform a substantial part of [the defendant's] duties," (4) the engagement in "any conduct . . . which violates any federal or state securities law," or (5) "being materially deficient in . . . compliance or employment obligations to the [plaintiff]."

[4] Although the defendant at trial denied making these promises to Urfirer, the court did not credit his denials and expressly credited Urfirer's contrary recollection of that conversation.

[5] See *Stone Key Group, LLC* v. *Taradash*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-16-6029872-S (July 25, 2019).